■ CHIARA M. O'CONNOR, Respondent, v DANIEL M. SLEAS-MAN, Appellant, et al., Defendant. [830 NYS2d 377]—

Peters, J.P. Appeals (1) from an order of the Supreme Court (Connor, J.), entered January 13, 2006 in Rensselaer County, which, inter alia, granted plaintiff's motion to confirm the jury verdict, and (2) from the judgment entered thereon.

The relevant facts in this matter are contained in a previous decision of this Court (14 AD3d 986 [2005]). Briefly, defendant Daniel M. Sleasman (hereinafter defendant) entered into a contract with plaintiff for the sale of her home in May 2002 for $765,000. The contract called for a $40,000 deposit, consisting of an initial deposit of $10,000 and a $30,000 deposit after the satisfaction of various contingencies. Although the closing was scheduled to take place on July 31, 2002, the parties agreed to an extension of the closing date to September 16, 2002 with the $30,000 deposit balance due on August 15, 2002. When defendant requested a further extension, plaintiff's counsel informed him that she would negotiate such extension after the balance of the deposit was made. By letter dated September 9, 2002, defendant stated that he would not be able to close on September

16, 2002 and was still unable to provide the balance of the deposit. Notably, the contract never provided that time was of the essence.

As a result of conversations between plaintiff's counsel and Robert Blackman, principal of plaintiff's real estate agent, defendant Realty USA, who sought to help facilitate the sale, Blackman was told to request "something in writing" from defendant in the form of a proposal regarding his intentions on going forward. In response, defendant faxed a proposal to Blackman on September 16, 2002, which was thereafter submitted to plaintiff. The next day, plaintiff terminated the contract, advising defendant that his attempts to "completely restructure the agreement and [his] obligations" were unacceptable and that he was in default for failing to furnish the balance of the deposit and close on September 16, 2002.

Plaintiff commenced this action for breach of contract, seeking the remaining $30,000 balance of the deposit. After plaintiff moved for summary judgment, defendant cross-moved for summary judgment dismissing the complaint. Supreme Court (Ceresia, Jr., J.) denied plaintiff's motion and partially granted defendant's motion with respect to the breach of contract claim, finding issues of fact as to whether defendant committed an anticipatory repudiation. Defendant later moved for summary judgment on this issue, and Supreme Court, treating it as a motion to reargue, dismissed plaintiff's anticipatory repudiation claim and ordered the $10,000 deposit returned to defendant. Upon appeal of both orders to this Court, we dismissed plaintiff's appeal regarding the breach of contract claim as untimely and reversed the dismissal of plaintiff's anticipatory repudiation claim by finding a question of fact (14 AD3d 986 [2005], *supra*). Upon remittal of that issue, the jury found that defendant repudiated the contract. After a denial of defendant's motion to set aside the verdict pursuant to CPLR 4404 (a), Supreme Court awarded plaintiff the $40,000 deposit as liquidated damages. Defendant appeals.

We reject defendant's initial contention that Supreme Court failed to adhere to the doctrine of law of the case, resulting in the admission of immaterial evidence that prejudiced and confused the jury. Agreeing that the determination that defendant had not breached the contract due to his failure to close on a specified date was law of the case (*see People v Evans*, 94 NY2d 499, 502-504 [2000]), aptly characterized as " 'a kind of intra-action res judicata' " (*id.* at 502, quoting Siegel, NY Prac § 448, at 723 [3th ed]), our remittal to Supreme Court was solely on the issue of anticipatory repudiation (14 AD3d 986, 986

[2005], *supra*). The record reflects that Supreme Court clearly articulated its awareness of the scope of the issue remitted and, therefore, allowed evidence which led to defendant's fax as being relevant to that determination. We find no abuse of its discretion.

Next contending that the jury's verdict was unsupported by legally sufficient evidence as a matter of law, it is well settled that a verdict may be set aside on this basis if "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *see Apuzzo v Ferguson*, 20 AD3d 647, 647 [2005]; *Lawrence v Capital Care Med. Group, LLC*, 14 AD3d 833, 834 [2005]).

To support the claim of anticipatory repudiation, there must be "an unqualified and clear refusal to perform with respect to the entire contract" (*DeLorenzo v Bac Agency*, 256 AD2d 906, 908 [1998]). While it may be found if a repudiating party is seeking "to avoid its obligations by advancing an 'untenable' interpretation of the contract, or has communicated its intent to perform only upon the satisfaction of extracontractual conditions" (*SPI Communications v WTZA-TV Assoc. Ltd. Partnership*, 229 AD2d 644, 645 [1996]), we have cautioned that "[s]uch a factual determination is heavily dependent upon a determination of whether 'a breaching party's words or deeds are unequivocal' " (14 AD3d 986, 987-988 [2005], *supra*, quoting *Norcon Power Partners v Niagara Mohawk Power Corp.*, 92 NY2d 458, 463 [1998]).

Here, defendant's modification proposal was affirmatively solicited by plaintiff or her agents. It commenced with the words "[w]e suggest the following." A plain reading of its text reveals that not a single word or inference threatened nonperformance under the contract if the suggested modifications were not accepted. The jury heard extensive testimony from defendant as well as Blackman that this faxed letter was defendant's response to plaintiff's request to "get something in writing." Blackman confirmed that defendant never indicated to him or plaintiff that he was not willing to proceed with the real estate transaction if this proposal was not accepted. Hence, with not a scintilla of evidence indicating to the contrary and case law dictating that "[a] proposal of or a demand for performance on terms that go beyond the contract is not a repudiation . . . unless it is coupled with a threat of nonperformance if those terms are not accepted" (2 Farnsworth, Contracts § 8.21, at 562 [3rd ed]; *see SPI Communications v WTZA-TV Assoc. Ltd. Partner-*

*ship, supra* at 645), we find nothing to support the jury's determination that defendant's fax demonstrated "a definite and final communication of the intention to forego performance" (*Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 267 [1995]). As plaintiff's immediate termination of the contract was wrongful (*see Grace v Nappa*, 46 NY2d 560, 565 [1979]; *Mercer v Phillips*, 252 AD2d 900, 901 [1998]; *Hamburger v Rieselman*, 206 AD2d 822, 825 [1994]), defendant was entitled to the return of his down payment (*see Hamburger v Rieselman, supra* at 825; *Levine v Sarbello*, 112 AD2d 197, 200 [1985], *affd* 67 NY2d 780 [1986]; *see also Maxton Bldrs. v Lo Galbo*, 68 NY2d 373, 378 [1986]).*

Carpinello, Rose and Kane, JJ., concur. Ordered that the order and judgment are reversed, on the law, with costs, and defendant Daniel M. Sleasman is entitled to the return of his down payment.

---

* Although there was a liquidated damage stipulation in the parties' contract, defendant specifically agreed to allow plaintiff to retain said deposit only "in the event of a failure to close," later qualified by plaintiff's attorney "as [defendant's] failure to close."