Burns v Reiser Bros., Inc. (2019 NY Slip Op 04522)





Burns v Reiser Bros., Inc.


2019 NY Slip Op 04522


Decided on June 6, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 6, 2019

527168

[*1]JAMES J. BURNS SR. et al., Appellants,
v
REISER BROTHERS, INC., Respondent, et al., Defendants.

Calendar Date: May 3, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Rumsey, JJ.


Martin, Shudt, Wallace, DiLorenzo & Johnson, Troy (Robert L. Adams of counsel), for appellants.
John T. Casey, Troy, for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeals from an order and an amended order of the Supreme Court (McGrath, J.), entered October 30, 2017 in Rensselaer County, which granted defendants' motion for, among other things, summary judgment on its counterclaim for breach of contract.
In December 2011, plaintiffs entered into a contract with defendant Reiser Brothers, Inc. for the construction of a new single-family residence within the Brook Hill Subdivision in the Town of Brunswick, Rensselaer County, for the price of $305,750. The parties later agreed to certain change orders for building upgrades/modifications, increasing the total purchase price to $322,241. Per the terms of the contract and an April 2012 change order, plaintiffs made various payments to defendants totaling $222,241. In June 2012, a certificate of occupancy was issued for the residence and plaintiffs thereafter completed a final walk-through of the property. In July 2012, however, plaintiff James Burns emailed defendant Henry Reiser, the president of Reiser Brothers, informing him that his health was not good and that plaintiffs did not want to purchase or close on the residence [FN1]. The parties' subsequent attempts to negotiate a cancellation agreement proved unsuccessful and no closing was ever scheduled. Reiser Brothers thereafter listed the property for sale in the fall of 2012 and, in April 2013, sold it to Reiser's daughter for $269,000.
Plaintiffs subsequently commenced this action, alleging causes of action for breach of contract and fraud, seeking, among other things, return of the $222,241 it paid to defendants. Defendants answered, asserting counterclaims for, as relevant here, breach of contract. Defendants then moved for summary judgment dismissing the complaint and granting their [*2]counterclaim for breach of contract. Finding that plaintiffs anticipatorily repudiated the contract for purchase and sale, Supreme Court granted defendants' motion in its entirety and determined that defendants were entitled to retain plaintiffs' payments, totaling $222,241. Plaintiffs appeal.[FN2]
Initially, we find that Supreme Court properly granted defendants' motion for summary judgment on their breach of contract counterclaim. As relevant here, as the moving party, it was defendants' burden to establish its claim of anticipatory repudiation by proffering evidence of plaintiffs' "unqualified and clear refusal to perform with respect to the entire contract" (Joseph P. Carrara & Sons, Inc. v A.R. Mack Constr. Co., Inc., 89 AD3d 1190, 1191 [2011]; see Norcon Power Partners v Niagara Mohawk Power Corp., 92 NY2d 458, 463 [1998]; O'Connor v Sleasman, 37 AD3d 954, 956 [2007], lv denied 9 NY3d 806 [2007]), which may be demonstrated through "unequivocal statement[s] or act[s]" (Highbridge Dev. BR, LLC v Diamond Dev., LLC, 67 AD3d 1112, 1115 [2009]). In support of their motion, defendants submitted, among other things, the affidavit of Reiser, the June 2012 certificate of occupancy and copies of several email exchanges between Reiser and Burns. Submission of the June 2012 certificate of occupancy established that the residence plaintiffs contracted for had been completed. In his affidavit, Reiser indicated that plaintiffs were given a final walk-through of the premises and expressed "nothing but complete satisfaction with the quality" and construction of the home. In a subsequent email exchange on July 9, 2012 and July 10, 2012, Burns inquired of Reiser whether plaintiffs could move into the residence prior to closing. Only two days later, however, in a July 12, 2012 email, Burns informed Reiser that, although he was aware that plaintiffs were under contract, his health was not good and inquired whether it would be possible for Reiser to sell the residence or whether they could otherwise "work something out." On July 24, 2012, plaintiffs' counsel notified defendants' counsel that plaintiffs would not be proceeding with the purchase of the residence and, thereafter, on July 31, 2012, Burns sent another email to Reiser indicating that plaintiffs do "not want to purchase or close on the house do [sic] to [his] failing health."
Contrary to plaintiffs' contention, we find that Burns' July 31, 2012 email was an unequivocal and clear expression of plaintiffs' intent not to follow through with the purchase and/or closing on the property pursuant to the contract (see Joseph P. Carrara & Sons, Inc. v A.R. Mack Constr. Co., Inc., 89 AD3d at 1191-1192). In opposition, plaintiffs failed to present any evidence casting doubt as to their expressly stated intent not to finalize the purchase of the residence and, given plaintiffs' repudiation, defendants, as the non-repudiating parties, were "relieved . . . of any duty to terminate the [contract]" (Vitolo v O'Connor, 223 AD2d 762, 764 [1996]; see Fonda v First Pioneer Farm Credit, ACA, 86 AD3d 693, 695 [2011]; Bucciero v Jian Sheng Li, 191 AD2d 887, 889 [1993]). Plaintiffs also failed to demonstrate how any additional discovery with regard to the proposed post-repudiation cancellation agreement, which the parties never executed, is relevant to or might otherwise raise a triable issue of fact with regard to whether they anticipatorily repudiated the contract in the first instance (see Land Man Realty, Inc. v Weichert, Inc., 94 AD3d 1221, 1222 [2012]; Joseph P. Carrara & Sons, Inc. v A.R. Mack Constr. Co., Inc., 89 AD3d at 1192).
Having determined that plaintiffs breached the contract, the issue distills to whether Supreme Court correctly determined that, as a result thereof, they forfeited, as a matter of law, the $222,241 in payments made to defendants prior to their cancellation of the contract. Defendants argue that we must apply the well-settled rule set forth by the Court of Appeals over a century ago in Lawrence v Miller (86 NY 131 [1881]), which was later reaffirmed in Maxton Bldrs. v Lo Galbo (68 NY2d 373 [1986]), "that a vendee who defaults on a real estate contract without lawful excuse[ ] cannot recover his or her down payment" (Maxton Bldrs. v Lo Galbo, [*3]68 NY2d at 378; accord Cipriano v Glen Cove Lodge #1458, B.P.O.E., 1 NY3d 53, 62 [2003])[FN3]. However, we find that forfeiture of the payments made by plaintiffs in this case, which constitute approximately 69% of the total contract amount, represents, on its face, a damages award disproportionally higher than the actual damages incurred by defendants (see generally Truck Rent-A-Ctr. v Puritan Farms 2nd, 41 NY2d 420, 424 [1977]), such that defendants have failed to establish, as a matter of law, their entitlement to a damages award equivalent to all payments made by plaintiffs [FN4]. Accordingly, Supreme Court should have denied this portion of defendants' motion. As a result, a trial is required to determine the appropriate amount of defendants' damages.[FN5]
Garry, P.J., Lynch, Clark and Rumsey, JJ., concur.
ORDERED that the appeal from the order is dismissed, without costs.
ORDERED that the amended order is modified, on the law, without costs, by reversing so much thereof as awarded damages; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: Plaintiffs aver that, in February 2012, Burns suffered a heart attack.

Footnote 2: Plaintiffs' appeal from the order dated October 17, 2014 must be dismissed as it was superseded by the amended order (see Matter of Troy Sand & Gravel Co. v Fleming, 156 AD3d 1295, 1297 n 1 [2017], lv denied 31 NY3d 913 [2018]).

Footnote 3: Notably, in Maxton, the Court of Appeals "express[ed] no view concerning the parties' rights with respect to [installment payments beyond a 10% down payment] following the vendee's default" (Maxton Bldrs. v Lo Galbo, 68 NY2d at 382 n 3) — the situation with which we are now presented. Although we recognize that subsequent case law has rigidly applied the Lawrence/Maxton rule resulting in forfeiture of down payments far in excess of the 10% contemplated by Maxton (see e.g. Uzan v 845 UN Ltd. Partnership, 10 AD3d 230, 239-240 [2004] [upholding forfeiture of payments constituting approximately 25% of contract price]; Collar City Partnership I v Redemption Church of Christ of Apostolic Faith, 235 AD2d 665, 666-667 [1997] [upholding forfeiture of payments constituting approximately 47% of contract price], lv denied 90 NY2d 803 [1997]; Vitolo v O'Connor, 223 AD2d at 764 [upholding forfeiture of payments constituting approximately 23% of contract price]), such cases did not involve the issue of installment payments made on new residential construction or a circumstance where the forfeiture, on its face, results in a "net benefit conferred" to the nondefaulting party (Maxton Bldrs. v Lo Galbo, 68 NY2d at 382).

Footnote 4: We note that the combined payments made by plaintiffs ($222,241) and the eventual purchaser ($269,000) total $491,241 or $169,000 more than the original contract amount.

Footnote 5: At trial, Supreme Court may take into account, among other things, the originally agreed-upon purchase price, the payments made by plaintiffs, the fair market value of the property at the time of the breach, the amount received by defendants from the subsequent purchaser of the property and any incidental expenses incurred by defendants between the time of the breach and the sale of the property (see generally White v Farrell, 20 NY3d 487, 499 [2013]; 12 Baker Hill Rd., Inc. v Miranti, 130 AD3d 1425, 1427 [2015]).